CARLIE EDWARDS, Plaintiff in Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

424 S.W.2d 783.

(*Nashville*, December Term, 1967.)

Opinion filed February 9, 1968.

62

HENRY, McCORD, FORRESTER & RICHARDSON, Tullahoma, for plaintiff in error. DOYLE E. RICHARDSON, Tullahoma, of counsel.

GEORGE F. McCANLESS, Attorney General, and PAUL E. JENNINGS, Assistant Attorney General, Nashville, for defendant in error; and HARRY C. TEMPLETON, District Attorney General, Winchester, prosecuted the case in the trial court.

MR. JUSTICE CRESON delivered the opinion of the Court.

This is an appeal in error from a judgment rendered in the Criminal Court of Franklin County. The parties will be referred to herein as they appeared in the court below; that is, plaintiff in error Carlie Edwards as defendant, and defendant in error as the State.

The defendant was indicted for murder in the first degree for a homicide which occurred in Winchester, Tennessee, on January 4, 1966. The trial was held on November 14 and 15, 1966. The jury returned a verdict of guilty of murder in the first degree, and sentenced the defendant to twenty years and one day in the State Penitentiary.

The State's case consisted of the following evidence: (1) An eyewitness testified that he observed the shooting from a position across the street; that he saw the defendant approach the deceased from the rear; that when the two men were some four feet apart, the defendant shot the deceased five times. (2) Another eyewitness testified that the defendant fired three shots at the deceased as the defendant crossed the street, and two other shots from the curb; and that as the defendant was shooting, the deceased was backing away toward a hedge. (3) Two witnesses testified that on more than one occasion, they heard the defendant state that he was going to kill the deceased.

The evidence of the defense was (1) that the deceased had been instrumental in causing the divorce of defendant and his former wife, (2) that the deceased had continued to date the defendant's former wife, (3) that the deceased and the defendant had argued previously, and the deceased had threatened to kill the defendant, (4) that on the morning of the killing, the defendant obtained

a .22 caliber pistol from his sister as payment for a debt, (5) that the defendant had taken the pistol to Winchester, in order to sell it, (6) that immediately before the killing, the deceased had wired the defendant's former wife $40.00 to pay her transportation from Florida to Winchester, (7) that the defendant did not anticipate a meeting with the deceased on the morning of the killing; that when the defendant saw the deceased enter the Western Union office, he proceeded in a different direction, (8) that the deceased followed the defendant down the street from the telegraph office, threatened the defendant, and reached into his pocket as if to draw a gun, and (9) that the defendant shot only in self-defense.

The defendant has filed ten assignments of error on this appeal. In assignments 1 and 2, the defendant asserts that there was no evidence to support the verdict of guilty; and that the verdict was contrary to the weight and preponderance of the evidence. The principal contention of the defendant in this regard is that the jury erroneously rejected the theory of self-defense; and that if the defendant was guilty of any offense, it was manslaughter or, at most, murder in the second degree.

 The record reveals that the evidence was controverted regarding the existence or nature of any dispute between the defendant and the deceased. The same is true, and critically so, with respect to whether or not the evidence supported any right of defendant to kill in his own necessary self-defense. The jury decided those issues against the defendant. This Court cannot say that the evidence preponderates against that finding. *Arterburn v. State* (1965) 216 Tenn. 240, 391 S.W.2d 648; *May v. State* (1967) 220 Tenn. 541, 420 S.W.2d 647.

■ The defendant vigorously contends that the State introduced no evidence to establish the necessary elements of premeditation and deliberation to sustain a conviction of murder in the first degree. This Court has many times held that the elements of premeditation and deliberation may be inferred from the circumstances of the killing. In *Bass v. State* (1950) 191 Tenn. 259, 231 S.W.2d 707, the Court said:

"Both premeditation and deliberation may be inferred from the circumstances of a homicide. While wilful killing with a deadly weapon is not a sufficient basis for an inference of premeditation and deliberation, it is seldom that the evidence in a case of homicide is restricted to no more than these bare facts and it is commonly the case that the jurors have before them other circumstances from which they may infer the existence or the want of the mental elements of premeditation and deliberation." 191 Tenn. at 270, 231 S.W.2d at 711.

■ The record indicates that the defendant had stated an intention to kill the deceased. The defendant was in possession of a deadly weapon and fired a number of shots at the deceased, at least some of which were fired when the deceased was retreating from the defendant. It is true that these facts are controverted by the defendant. The defendant has not, however, adduced sufficient evidence to sustain his burden of showing, on appeal, that the evidence preponderates against the verdict of guilt. *Cooper v. State* (1909) 123 Tenn. 37, 138 S.W. 826; *McBee v. State* (1963) 213 Tenn. 15, 372 S.W.2d 173; *Nelson v. State* (1967) 219 Tenn. 680, 413 S.W.2d 358.

■■ It is the duty of the jury to fix the degree of the homicide, as shown by the facts. *Tate v. State* (1967)

219 Tenn. 698, 413 S.W.2d 366. The defendant urges that there was ample provocation to lessen the degree of the offense, in the present case, from the first degree to second degree, or manslaughter. The defendant, however, has not produced sufficient evidence to overcome the presumption in favor of the jury's finding that the provocation, if present, was inadequate to reduce the homicide to a degree less than first.

By assignment of error No. 3, the defendant asserts that the court erred in allowing the District Attorney to cross-examine the defendant from a confession made by the defendant without his being properly and previously advised of his right to counsel and to remain silent. The record shows that when the defendant's counsel objected, the court sustained his objection and ruled out any use of the confession.

By assignment of error No. 4, the defendant sets forth a number of instances in which the Attorney General was allowed to cross-examine the defendant, over objection, "about matters with no probative value but highly prejudicial to defendant's case." We have examined all of the instances cited by the defendant and find that no prejudicial error was committed. In this State, the scope of cross-examination is within the trial court's discretion and will not be interfered with in the absence of abuse. We find no abuse of the trial judge's discretion in the instances cited.

By assignment of error 5, the defendant lists several instances in which he was deprived of a fair trial by the method in which the Attorney General and the special prosecutor questioned certain of the State's witnesses and cross-examined certain of the defendant's witnesses,

all over the objection of the defendant. This Court has examined each of these instances, and finds that the record will simply not support a finding that the defendant was prejudiced by any conduct of the Attorney General in the examination or cross-examination of witnesses.

■ In assignment of error No. 6, the defendant argues that the court erred in disallowing one of the State's witnesses to answer, on cross-examination, the following question:

"Now Johnny, I believe you also told Carlie back before he and his wife were divorced, that your sister was going out with Bryant Sanson, didn't you."

The record discloses that the trial court refused to allow this question to be asked before the proper foundation was laid. Practically the same question was asked and answered a short time thereafter when counsel was able to show its relevancy. Consequently, there was no error.

■ By assignment of error No. 7, the defendant contends that the trial court erred in ruling that it was incompetent and immaterial for the defendant to show that he had received information prior to the shooting that the deceased was carrying a gun. The record reveals that the trial court's ruling was merely for the purpose of eliminating any inadmissible hearsay evidence. It is true that the court refused to let the defendant's counsel ask the defendant if he had received information that the deceased was carrying a gun and was going to "get him". Nevertheless, the trial court did allow defendant's counsel to introduce the same information when it was shown that the statement was coupled with a threat. The

court only required counsel to make the question more specific as to the date, time and circumstance, before he allowed it into evidence. There was no error in this regard.

The defendant next argues, in assignment of error No. 8, that the trial court erred in sanctioning and commenting on argumentative and prejudicial questions asked of the defendant's witness by the Attorney General. The record shows that the trial court first overruled the defendant's objection; but, after considering further argument from defendant's counsel, reversed himself and sustained the objection. Any error in this regard was cured when the court sustained the objection and instructed the jury to disregard both the question and the answer.

It is asserted in assignment of error No. 9 that the court erred in charging the jury that the defendant's credibility was to be determined by the same rules as other witnesses, without adding that the jury should not consider this as an impairment of the presumption of innocence. The record shows that the court completely charged the jury as to the presumption of innocence. In addition, the defendant did not request an additional instruction in this regard. No error was committed.

In his final assignment of error, the defendant contends that the court erred in failing to charge the jury on the law applicable to circumstantial evidence. This, since the State's theory regarding the element of "lying in wait" was founded entirely on circumstantial evidence. In the present case, the evidence establishing the defendant's responsibility for the homicide is direct and not circumstantial. It was not necessary for the trial

judge to give an instruction with regard to circumstantial evidence.

This Court has made an exhaustive study of the technical record, bill of exceptions, and briefs of counsel. All of the assignments of error are overruled and the judgment of the trial court is affirmed. The costs of this appeal are assessed against the plaintiff in error.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and HUMPHREYS, JUSTICES, concur.