IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs August 15, 2017 at Knoxville

**STATE OF TENNESSEE v. PAUL BUCHANAN**

**Appeal from the Criminal Court for Shelby County**
**No. 14-02411        James C. Beasley, Jr., Judge**

_____

**No. W2017-00160-CCA-R3-CD**

_____

The Appellant, Paul Buchanan, was convicted of aggravated robbery, two counts of felon in possession of a firearm, and one count of convicted felon in possession of handgun. The trial court merged the convicted felon in possession of handgun and one of the felon in possession of a firearm convictions into the remaining felon in possession of a firearm conviction and sentenced the Appellant to thirty years for aggravated robbery and to ten years for convicted felon in possession of a firearm, to be served consecutively. On appeal, the Appellant argues that there was insufficient evidence to support the convictions. After reviewing the record and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and CAMILLE R. MCMULLEN, JJ., joined.

Patrick E. Stegall, Memphis, Tennessee, for the appellant, Paul Buchanan.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Stacy McEndree, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## Factual Background

The Appellant was indicted for aggravated robbery for taking money from the person of Antonio Blake by violence or by putting Mr. Blake in fear, with said taking accomplished with a deadly weapon (Count 1), two counts of felon in possession of a firearm (Counts 2 and 3), and one count of convicted felon in possession of handgun (Count 4).

*Jury Trial*

Mr. Blake testified that he resided in a duplex at 1084 North Claybrook Street in Memphis. Charles Lee Guy and the Appellant lived next door. Mr. Blake said that he saw the Appellant frequently.

On the night of April 13, 2013, a friend dropped Mr. Blake off at his duplex after dinner. Mr. Blake walked up on the porch, unlocked both the exterior security door and interior door, and turned on the inside light. He heard someone coming from the other side of the duplex, and when he turned around, he saw a man with a chrome pistol pointed at his face. The man rushed into his house and asked "if I knew what time it was and where my money was?"[1] The man grabbed Mr. Blake, choked him briefly, and then reached into Mr. Blake's pocket, removed his wallet, and took out five, twenty-dollar bills. Mr. Blake testified that a table and chair were knocked over during the altercation. Mr. Blake testified that he had "no difficulty seeing" the Appellant and that he recognized the Appellant's voice when he asked "if I knew what time it was." Mr. Blake stated that he had spoken with the Appellant many times before and that the Appellant "speaks with a lisp, or something like a slur, kind of stutters sometimes." Although Mr. Blake thought another person was outside, only the Appellant entered his home. After the Appellant left, Mr. Blake called 9-1-1, and law enforcement officers came to his house, talked with him, and took photographs of the scene.

Mr. Blake subsequently provided a statement to Memphis Police Department ("MPD") Sergeant Jeff Dennison and identified the Appellant in a photographic lineup by placing a red circle around the Appellant's photograph. Mr. Blake testified that he did not hesitate in circling the Appellant's photograph because "[he] knew who robbed [him]." The "photospread" containing six photographs with one photograph circled in

---

[1] In this instance, it is not clear whether "my money" is in reference to Mr. Blake's money or the Appellant's money. However, at numerous other places in the record, it is clear that Mr. Blake is referring to his own money when he uses the phrase "my money."

red was entered as an exhibit. Mr. Blake also identified the Appellant as the person who robbed him at the preliminary hearing and during the jury trial.

On cross-examination Mr. Blake said he was not sure if another person was standing outside. He stated, "It was dark, I really couldn't see outside, I didn't really see anyone else, I recognized [the Appellant]." Mr. Blake said he did not remember telling the 9-1-1 dispatcher that two people had robbed him, and he did not remember telling police at his house on the night of the incident that two people robbed him, one named Paul and one named Michael, and that Michael had the gun and hit him in the face. Mr. Blake also stated that he did not remember telling the police that he was sitting inside his house when two men came inside and robbed him. Mr. Blake did recall talking to Sergeant Dennison ten days after the robbery and telling him that two people robbed him. Upon further questioning about the statement he gave to Sergeant Dennison, Mr. Blake stated:

> In the statement, yes, sir. It says, "Another guy was with him[.]"[] There was another guy with him, I don't know who he was, [the Appellant] brandished a gun, walked up to me and said, "You know what time it is[,]"[] and tasseled [sic] me and pulled my money out of my pocket, we tussled and he left.

On redirect examination, Mr. Blake read the following from the statement, which he gave Sergeant Dennison:

> I got home from Beale Street, about to get a tattoo, I opened the door to my duplex, [the Appellant] came out of 1082, there was another guy with him, I don't know who it was, [the Appellant] brandished a gun, walked up to me and said, you know what time it is, and he was choking me and pulled my money out of my pocket, we tussled and he left.

Mr. Blake admitted that he was "not sure there actually was a second person."

MPD Officer Catlin Kelly testified that he responded to a call at 1084 North Claybrook Street on April 14 and spoke with Mr. Blake. Officer Kelly said, "The house was in disarray, there was furniture knocked over, some of the furniture was broken." Officer Kelly said that Mr. Blake provided him with the name of the person he said robbed him and that he forwarded the name to Sergeant Dennison. On cross-examination, Officer Kelly said that Mr. Blake stated that he was robbed by two people, one named Paul and the other named Michael. When Officer Kelly's memory was refreshed with his report, he stated that Mr. Blake told him Michael had the gun.

Sergeant Jeff Dennison said he was the lead investigator on the case. He said he was assigned the case the following morning and went over the investigation report and examined the photographs of the crime scene. The Appellant was named as a suspect in the report. Sergeant Dennison contacted Mr. Blake, who told him that he had been robbed by the Appellant. He prepared a photospread, which he presented to Mr. Blake. He said within a few seconds Mr. Blake identified the Appellant, circled his picture, and wrote below the photograph "Suspect who robbed me." Mr. Blake informed Sergeant Dennison that there was a second individual who stood in the doorway during the robbery, but he could not identify that person.

At the conclusion of the State's proof, the trial court informed the jury that the parties had agreed to three stipulations and explained to the jury what a stipulation was and how it should be considered by the jury. The parties stipulated that: (1) as to Count 2, that the Appellant was convicted of a felony involving the use of violence to the person on March 27, 1998; (2) as to Count 3, that the Appellant was convicted of a felony drug offense on August 9, 2002; and (3) as to Count 4, that the Appellant was convicted of felony offenses on June 22, 2012.

The Appellant initially stated during the *Momon* hearing that he wanted to testify. After a discussion on the record, the trial court determined the prior offenses that the State could use to impeach the Appellant. The Appellant then changed his mind and decided not to testify. The Appellant did not present any proof.

Following deliberations, the jury found the Appellant guilty on all counts.

*Sentencing*

Although no testimony was presented at the Appellant's sentencing hearing, the Appellant's presentence report and prior convictions were entered as exhibits. Regarding the convictions involving firearms, the trial court found that, as to Count 2, that the Appellant had been previously convicted of prior felony involving a crime of violence; as to Count 3, that he had been convicted of a prior felony drug offense; and as to Count 4, that he had been convicted of a prior felony. The court then merged Counts 3 and 4 into Count 2 and found that the Appellant had previously been convicted of a crime of violence, making Count 2 a class C felony. The court found the Appellant to be a persistent offender for Counts 1 and 2. The court sentenced the Appellant to thirty years for aggravated robbery and to ten years for felon in possession of a firearm. The court ordered the sentences to be served consecutively for an effective sentence of forty years.

**Analysis**

The only issue raised on appeal is whether the evidence was sufficient to support the Appellant's convictions. Specifically, the Appellant argues that "[t]he State failed to prove that the Appellant actually committed the robbery or possessed a firearm." The State argues that there was sufficient evidence to support the convictions. We agree with the State.

The applicable standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e). Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and a defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007).

Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact-finder. *Bland*, 958 S.W.2d at 659. It is a "well-settled rule in this State that the verdict of the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966). Our Supreme Court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witness face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Id.* (citing *Carroll v. State*, 370 S.W.2d 523 (1963)). This court will not reweigh the evidence. *Bland,* 958 S.W.2d at 659.

- 5 -

The identity of the perpetrator is "an essential element of any crime." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). The question of identity is a question of fact left to the trier of fact to resolve. *State v. Crawford*, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982).

At trial, the State was required to prove beyond a reasonable doubt that the Appellant committed aggravated robbery, two counts of felon in possession of a firearm, and one count of convicted felon in possession of handgun.

Robbery "is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401 (2013). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *Id.* § 39-14-103(a) (2013). As relevant here, robbery becomes aggravated robbery when it is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" Tenn. Code Ann. § 39-13-402 (2013).

In the present matter, Mr. Blake identified the Appellant at the crime scene, when he gave a statement to Sergeant Dennison, and in the courtroom at trial. Mr. Blake testified that, after a friend dropped him off at his duplex and he unlocked his doors, he heard someone coming from next door, and when he turned around, he saw a man with a chrome pistol pointed at his face. The man grabbed Mr. Blake, choked him briefly, and then reached into Mr. Blake's pocket, removed his wallet, and took out five, twenty-dollar bills. Mr. Blake testified that he had "no difficulty seeing" the Appellant and that he recognized the Appellant's voice when he asked "if I knew what time it was."

The Appellant claims that the State failed to prove he committed the robbery or possessed a firearm because Mr. Blake, in contrast to what he later told Sergeant Dennison and testified to at trial, initially told Officer Kelly that two men robbed him and that "Michael" had the pistol. The jury, as the trier of fact, resolves all questions of witness credibility. *Crawford*, 635 S.W.2d at 705. By finding the Appellant guilty of aggravated robbery, the jury accredited Mr. Blake's identification of the Appellant as the person who robbed him. *Bolin*, 405 S.W.2d at 771. The Appellant has failed to prove the evidence was insufficient to support his conviction of aggravated robbery.

Any person, having been convicted of a felony involving the use of or attempted use of force, violence, or a deadly weapon; who subsequently unlawfully possesses a firearm, is guilty of convicted felon in possession of a firearm. Tenn. Code Ann. § 39-17-1307(b)(1)(A) (2013). Any person, having been convicted of a felony drug offense,

who subsequently unlawfully possesses a firearm, is guilty of convicted felon in possession of a firearm. Tenn. Code Ann. § 39-17-1307(b)(1)(B) (2013). Any person, having been convicted of a felony, who subsequently unlawfully possesses a handgun, is guilty of convicted felon in possession of a handgun. Tenn. Code Ann. § 39-17-1307(c) (2013).

Mr. Blake testified that the Appellant pointed a pistol at him during the robbery. The parties stipulated the underlying prior felonies necessary to support the three weapon counts.

The Appellant claims that the State failed to prove that he possessed a firearm or handgun because Mr. Blake initially told Officer Kelly that two men robbed him and that "Michael" had the pistol. As previously stated, the jury, as the trier of fact, resolves all questions of witness credibility. *Crawford*, 635 S.W.2d at 705. By finding the Appellant guilty in Counts 2, 3, and 4; the jury accredited Mr. Blake's testimony that the Appellant possessed the pistol. *Bolin*, 405 S.W.2d at 771. The Appellant has failed prove that the evidence was insufficient to support his convictions of convicted felon in possession of a firearm in Counts 2 and 3 and convicted felon in possession of a handgun in Count 4.

## Conclusion

For the aforementioned reasons, the judgments of conviction are affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE